# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PATRICIA FLORES on behalf of herself and all others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> UNITED AIRLINES, <br><br> Defendant. | Case No. 18-cv-06571 <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Patricia Flores, on behalf of herself and all others similarly situated, sues Defendant United Airlines ("United") and alleges as follows.

## INTRODUCTION

1. This is a class action filed to redress injuries that Plaintiff and a class of customers have suffered, and will continue to suffer, as a result of United's deceptive practices relating to its presentation of the charge for trip insurance sold on its website.

2. On its website, and throughout the online process of purchasing a flight ticket and trip insurance, United leaves the customer with the false impression that the charge for trip insurance is a pass-through fee, i.e., a fee that is passed on to another entity and for which United has no financial interest.

3. The net impression of United's representations and omissions to customers is that, when customers purchase a trip insurance policy, the funds to cover the policy's cost go to an independent third-party insurance company, whom United identifies as the company offering the policy for sale to the customer. Indeed, United tells customers that "[c]overage is offered by Travel Guard Group, Inc."

4. In reality, and despite lacking a license to broker insurance policies, United retains or ultimately receives an undisclosed kickback from every policy sold.

## PARTIES, JURISDICTION, AND VENUE

5. Plaintiff Patricia Flores is an individual who is a citizen and resident of Texas.

6. United is a Delaware corporation with its principal place of business in Chicago, Illinois.

7. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this is a class action for a sum exceeding $5,000,000.00, exclusive of interest and costs, and in which at least one class member is a citizen of a state different from United.

8. United is subject to personal jurisdiction in the State of Illinois because it is a citizen of Illinois, regularly transacts business in both Illinois and this judicial district by, among other things, offering its services and the products of its affiliates in Illinois and this judicial district. In addition, United has committed tortious acts in this judicial district.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because the sole Defendant resides in this district.

10. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events and/or omissions giving rise to Plaintiff's claims occurred in this district.

11. Finally, venue is proper under 28 U.S.C. § 1391(b)(3) as United is subject to personal jurisdiction in this district and has committed tortious acts in this judicial district.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

12. In addition to operating flights nationwide, United operates hundreds of daily flights to and from four different airports in Illinois. As part of its business, United sells tickets to customers through its website, www.United.com.

13. When a customer visits United's website, the site allows the customer to select his or her preferred destination and travel dates.

14. Upon the customer's selection of his or her specific flights, United's website provides the customer with the price to purchase the selected flights.

15. Before the customer completes his or her purchase, United's website requires the customer to make an election regarding purchasing a trip insurance policy with a third-party insurance provider.

16. There is no way to purchase a ticket on United's website without making an election regarding trip insurance.

17. United markets the third-party trip insurance to its customers in a uniform fashion—each customer sees the same marketing language when purchasing a ticket.

18. After the customer selects the desired flight or flights, enters his or her personal information, and selects his or her seat, the customer reaches the "Payment" page.

19. At the top of this page is a heading in bold that states: "**United Travel Options**."

20. Under this heading, there is a sentence that reads "Cover your trip with Travel Guard® insurance[.]"

21. Below that sentence, the Payment page contains language marketing the Travel Guard insurance.

22. Specifically, the Payment page reads as follows:

> Don't miss out!  Plan includes:
> -- Flight refund if you can't travel for a covered reason
> -- Coverage for lost baggage
> -- Coverage for flight cancellations and missed connections

23. The Payment page then presents the customer with two "option buttons."[1]

24. The first option states: "Yes, insure my trip for only $[Price]."

25. The second option states: "No, I don't want to purchase this travel insurance. I understand that by declining coverage I may be responsible for all cancellation fees and delay expenses."

26. Below these options is the statement, "Over 10 million travelers trust Travel Guard® plans for travel insurance."

27. This marketing is intended to create the impression that the trip insurance is in the customer's best interest—while hiding the fact that United is pushing the product because it is in its financial interest to generate sales. In other words, the customer is deceived into believing that United is acting in the customer's best financial interest, and not its own.

28. Customers are required to make an insurance election, as they are unable to proceed with purchasing their airline tickets on United's website until they choose whether to purchase a trip insurance policy. The customer cannot simply ignore the insurance offering and move on to purchasing a ticket.

29. Throughout this process, United conceals its financial interest in the sale of travel insurance by associating the purchase of travel insurance with an entity called "Travel Guard Group, Inc.[,]" and not with United.

---

[1] Option buttons, which are sometimes referred to as "radio buttons," are graphical control elements on a website that require the customer to choose between mutually exclusive options.

a. At the top of the Payment page, United tells the customer to "Cover your trip with Travel Guard® insurance."

b. Underneath the option buttons, United tells customers that millions of travelers "trust Travel Guard® plans for travel insurance."

c. United then tells its customers that "[c]overage is offered by Travel Guard Group, Inc."

30. United's concealment of its financial interest in the sale of travel insurance continues throughout the transaction.

31. Specifically, if a customer elects to buy travel insurance for a flight, United sends the customer a ticket receipt.

32. Within the ticket receipt, United lists the specific amount charged for "Trip insurance" and notes that the charge will be "Billed separately by Travel Guard Group, Inc."

33. This further deceives customers into thinking that the entire charged amount is going to Travel Guard Group, Inc.

34. In addition, if a customer elects to buy travel insurance for a flight, the insurer, not United, sends the customer an email containing a copy of the purchased insurance policy. Nowhere in that communication or accompanying insurance policy is there any reference to United receiving any payment in connection with the transaction.

35. At no point does United disclose that it receives a commission or kickback every time a customer elects to purchase the travel insurance product.

36. The net impression of all of United's representations and omissions to its customers—including, but not limited to, United's association of the insurance with a separate entity—is that any customer payments for travel insurance go entirely to the insurer.

5

37. This net impression is reinforced by the fact that state laws generally prohibit the unlicensed sale of insurance, including receipt of commissions on sales of insurance.

38. In Illinois, if an entity does not hold the appropriate license, it cannot sell insurance to a customer or receive commissions on sales.

39. Like Illinois, other states across the country prohibit the unlicensed sale or brokerage of insurance, including the receipt of commissions by people or entities without a license. For example, the New York Attorney General's Office has issued an official opinion that an insurer may not pay any commission to transportation companies for the sale of travel insurance unless the transportation company is a licensed and appointed insurance agent or broker. *See* Ex. 1, N.Y. General Counsel Opinion No. 4-23-2008 ("May an insurer pay an insurance commission to a cruise line or tour operator that is not a licensed and appointed insurance agent, or a licensed insurance broker? . . . No. An insurer may not pay an insurance commission to a cruise line or tour operator that is not either a licensed and appointed insurance agent, or a licensed insurance broker.").

40. It is thus reasonable for customers to expect that United is not receiving a commission or any other remuneration from any sales of insurance.

41. In reality, and completely unbeknownst to its customers, the trip insurance is a hidden profit center for United, as United retains or ultimately receives for itself a portion of the funds for every trip insurance policy its customers purchase on its website.

42. The trip insurance program on United's website represents an illegal kickback scheme—one in which United hides and misleads customers about its role and profit interest in the trip insurance policies sold on its website.

43. The price for the trip insurance sold on United's website is a price of the insurer, not United.

44. United provides no services to the customer in connection with the sale of trip insurance on its website.

45. No contractual relationship is formed between the customer and United in connection with a customer's purchase of trip insurance on United's website.

46. No bargained-for exchange takes place between the customer and United in connection with a customer's purchase of trip insurance on United's website.

47. On February 23, 2018, Plaintiff purchased a trip insurance policy on United's website. Plaintiff received an email from the insurance provider attaching her policy, which did not reference United.

48. United has never disclosed to Plaintiff, or any of the class members, the true nature of its relationship with Travel Guard Group, Inc. or any other entity that is associated with the travel insurance offered on United's website. Specifically, United has not disclosed the fact that it retains or receives a substantial kickback or commission on the policies made available on its website.

<strong><u>CLASS ACTION ALLEGATIONS</u></strong>

49. Plaintiff brings this lawsuit as a class action pursuant to Federal Rule of Civil Procedure 23.

**<u>Class Definition</u>**

50. Plaintiff seeks to represent the following class:

All persons who purchased a trip insurance policy on United's website within the applicable limitations period (the "Class Period").

Excluded from this class are United, its affiliates, subsidiaries, agents, board members,

directors, officers, and employees. Also excluded from the class are the district judge and magistrate judge assigned to this case, their staff, and their immediate family members.

51. This class action is brought pursuant to Rule 23(b)(2) because United has acted or refused to act on grounds generally applicable to all the members of the class, thereby making final injunctive relief or declaratory relief concerning the class appropriate.

52. This class action is also brought pursuant to Rule 23(b)(3) because the questions of law or fact common to Plaintiff's claim and the class members' claims predominate over any question of law or fact affecting only individual class members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

53. United has subjected Plaintiff and the members of the class to the same unfair, unlawful, and deceptive practices and harmed them in the same manner. The conduct described above is United's standard business practice.

**A.     Numerosity**

54. The individual class members are so numerous that joinder of all members in a single action is impracticable. United operates thousands of flights a day, and upon information and belief, it has sold thousands of trip insurance policies during the Class Period.

55. While Plaintiff estimates the proposed class numbers are in the thousands, the exact number of class members, as well as the class members' names and addresses, can be identified from United's business records.

**B.     Commonality/Predominance**

56. Common questions of law and fact exist as to Plaintiff's and the class members' claims. These common questions predominate over any questions solely affecting individual class members, including, but not limited to, the following:

a. Whether United engaged in a deceptive and unfair business practice by misleading the class about its financial interest in making available trip insurance policies and its receipt or retention of a kickback;

b. Whether the representations made about insurance premiums collected by United would lead the reasonable customer to believe it was a pass-through charge;

c. Whether United receives undisclosed kickbacks, commissions, or fees from the sale of trip insurance;

d. Whether United manipulated the class through trip insurance products in order to maximize its own profits at the expense of the class;

e. Whether United retains or receives a commission or kickback for the sale of trip insurance policies without a license;

f. Whether and to what extent United's conduct has caused injury to the Plaintiff and the class members; and

g. Whether United unlawfully enriched itself at the expense of the class.

C. **Typicality**

57. Plaintiff's claims are typical of the putative class members' claims because of the similarity, uniformity, and common purpose of United's unlawful conduct. Plaintiff, like all class members, was damaged through her payment of money that United deceptively presented as a pass-through charge to the insurance company, when in fact United enriched itself in this process.

58. Each class member has sustained, and will continue to sustain, damages in the same manner as Plaintiff as a result of United's wrongful and deceptive conduct.

**D.     Adequacy**

59.     Plaintiff will fairly and adequately protect and represent the interest of each member of the class because she has suffered the same wrongs as the class members.

60.     Plaintiff is fully cognizant of her responsibilities as class representative and has retained León Cosgrove, LLP to prosecute this case. León Cosgrove, LLP is experienced in complex class action litigation, including litigation related to unfair and deceptive trade practices, and has the financial and legal resources to meet the costs of and understand the legal issues associated with this type of litigation.

61.     Class action treatment is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged herein because such treatment will permit a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender.

**E.     The Prerequisites of Rule 23(b)(2) Are Satisfied.**

62.     The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Federal Rule of Civil Procedure 23(b)(2) exist as United has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive and equitable relief with respect to the class as a whole.

63.     United's actions are generally applicable to the class as a whole, and Plaintiff seeks, among other things, equitable remedies with respect to the class as a whole.

F.  **The Prerequisites of Rule 23(b)(3) Are Satisfied.**

64. The questions of law and fact enumerated above predominate over questions affecting only individual members of the class, and a class action is the superior method for fair and efficient adjudication of the controversy.

65. The likelihood that individual members of the class will prosecute separate actions, and their interest in so doing, is small due to the extensive time and considerable expense necessary to conduct such litigation.

66. This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the class. Plaintiff knows of no difficulty likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## COUNT I
## VIOLATION OF THE ILLINOIS CONSUMER
## FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT ("ICFA")

67. Plaintiff re-alleges paragraphs 1 through 66 as if fully set forth herein and further alleges the following.

68. This count is brought pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA").

69. At all times material hereto, Plaintiff, all class members, and Defendant were either natural persons or their legal representatives, partnerships, corporations, companies, trusts, business entities or associations.

70. Plaintiff and Class Members purchased the insurance at issue herein for their use or that of members of their households.

71. At all times material hereto, United engaged in the advertising, offering for sale, sale or distribution of services.

72. United has engaged in unlawful schemes and courses of conduct through one or more of the unfair and deceptive acts and practices alleged above.

73. Defendant engaged in such unlawful course of conduct with the intent to induce Plaintiffs and Class Members to purchase travel insurance and pay premiums above what they would otherwise pay.

74. Defendant made material misrepresentations, namely that the price of travel insurance was passed on in its entirety to a third party and that travel insurance was in the best interests of its customers, when in reality it was receiving a commission or kickback from the sale of every policy.

75. Defendant omitted material facts, namely that it retained or received a commission or kickback from the sale of every travel insurance policy.

76. Defendant's material misrepresentations and/or omissions created the likelihood of deception and had the capacity to deceive.

77. Defendant's acts or practices were "unfair" as they offend public policy, are immoral, unethical, oppressive, or unscrupulous, and/or cause substantial injury to consumers.

78. Defendant's acts or practices are immoral and unethical as they serve only to benefit Defendant to the detriment of the consuming public.

79. Defendant's acts or practices offend the clearly stated public policy prohibiting the receipt of commissions or kickbacks from the sale of insurance by an unlicensed entity as set forth in State law.

80. The injuries caused by Defendant's acts or practices, namely consumers' monetary losses, are not outweighed by any countervailing benefit to consumers or competition. Defendant's unfair acts served no purpose other than to increase its own profits.

81. These injuries were not reasonably avoidable. Because Defendant was the sole source of material information and did not disclose such information to its customers, consumers could not have had reason to anticipate the impending harm and thus avoided their injuries.

82. The unfair acts and deceptive practices of the Defendant alleged herein occurred in connection with Defendant's conduct of trade and commerce in Illinois. Specifically, the unfair acts and deceptive practices of the Defendant alleged herein were performed and undertaken entirely in Illinois.

83. In fact, all of the circumstances that make up the fraudulent transaction occur within Illinois, and all that occurs out of state is some class members' payments of premium.

84. Plaintiffs and Class Members were actually deceived by Defendant's misrepresentations, omissions, or unfair practices.

85. As a direct and proximate result of United's ICFA violations, Plaintiff and the class have been damaged in an amount to be proven at trial.

86. Plaintiff and Class Members would not have purchased the insurance at issue but for United's deceptive conduct.

87. Plaintiff and the class have a monetary, out-of-pocket loss, as they paid money to United as a result of its deceptive and unfair conduct.

88. Plaintiff and the class are entitled to actual damages, declaratory and injunctive relief, attorneys' fees and costs, and all other remedies available under ICFA.

## COUNT II
### UNJUST ENRICHMENT

89. Plaintiff re-alleges paragraphs 1 through 66 as if fully set forth herein and further alleges the following.

90. This is a count for unjust enrichment.

91. Plaintiff and each member of the class conferred a direct benefit on United through their payment for trip insurance, allowing United to enrich itself to the detriment of the class.

92. United appreciated, accepted, and retained this benefit, as it garnered substantial profits by virtue of its insurance kickback scheme.

93. Under the circumstances, it would be unjust and inequitable to allow United to retain this benefit, as it was obtained through deceptive representations.

94. Independently, it would also be unjust and inequitable to allow United to retain this benefit because United is not legally entitled to receive commissions for sales of trip insurance in the first place, because it does not have a license to broker insurance.

95. Plaintiff and the class suffered damages as a result of United's unjust enrichment.

### PRAYER FOR RELIEF

Named Plaintiff and the plaintiff class request the following relief:

    a. Certification of the class;

    b. A jury trial and judgment against United;

    c. An order requiring United to make full disclosure to customers of its receipt or retention of trip insurance premiums sold on its website and the amount of the kickback it retains or receives;

d. The costs of suit, including reasonable attorneys' fees, in accordance with ICFA;

e. General, actual, and compensatory and exemplary damages in an amount to be determined at trial;

f. Restitution of the amount United was unjustly enriched as a result of the wrongs alleged herein, in an amount to be determined at trial;

g. Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law; and

h. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as to all claims so triable.

Dated: September 26, 2018

Respectfully submitted,

/s/ Randall P. Ewing, Jr.
George A. Zelcs
Randall P. Ewing, Jr.
KOREIN TILLERY LLC
205 North Michigan Plaza, Suite 1950
Chicago, IL 60601
Phone: (312) 641-9750
Fax: (312) 641-9751
gzelcs@koreintillery.com
rewing@koreintillery.com

Stephen M. Tillery
Aaron M. Zigler
KOREIN TILLERY LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Phone: (314) 241-4844
stillery@koreintillery.com
azigler@koreintillery.com

s/ Alec H. Schultz
Scott B. Cosgrove
 Fla. Bar No. 161365
Alec H. Schultz
 Fla. Bar No. 35022
John R. Byrne
 Fla. Bar No. 126294
LEÓN COSGROVE, LLP
255 Alhambra Circle, Suite 800
Coral Gables, Florida 33134
Tel: (305) 740-1975
scosgrove@leoncosgrove.com
aschultz@leoncosgrove.com
jbyrne@leoncosgrove.com

*Counsel for Plaintiffs and Class*