UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICIA FLORES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 18 C 6571 |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| UNITED AIRLINES, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

The Court previously dismissed plaintiff Patricia Flores's first amended complaint asserting claims arising out of her decision to purchase travel insurance on defendant's website. The Court dismissed plaintiff's RICO claims with prejudice and her fraud and unjust enrichment claims without prejudice. Plaintiff has filed a second amended complaint, which defendant United Airlines ("United") moves to dismiss.[1] For the reasons set forth below, the Court grants the motion to dismiss.

**I.    BACKGROUND**

The facts plaintiff alleges in the second amended complaint are similar to the facts she alleged in the first amended complaint. The following facts are from plaintiff's second amended complaint, and the Court takes them as true.

---

[1] The Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). Plaintiff has alleged that there are "thousands" of class members (S. Am. Complt. ¶ 74) and that the amount in controversy exceeds $5,000,000.00 (S. Am. Complt. ¶ 8). Named plaintiff Flores is a citizen of Texas (S. Am. Complt. ¶ 6), and defendant is a citizen of Delaware (its state of incorporation) and Illinois (the location of its principal place of business) (S. Am. Complt. ¶ 7). Thus, at least one plaintiff is "a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

On its website, United sells tickets for the air transportation it provides. After a customer such as plaintiff has chosen a flight but before she has purchased it, United offers the customer the option to purchase travel insurance.

United's customers are not required to purchase travel insurance in order to purchase a ticket to fly, but they are required either to accept or reject the option of travel insurance. Under the heading "**United Travel Options**," the website says, "Cover your trip with Travel Guard ® insurance[.]" (S. Am. Complt. ¶¶ 26-27). Below that, the website reads:

> Don't miss out! Plan includes:
> --Flight refund if you can't travel for covered illness
> -- Coverage for lost baggage including laptops, phones and cameras

(S. Am. Complt. ¶ 30). A customer then has two options from which to choose: (1) "Yes, insure my trip for only $[price;]" or (2) "No, I will travel without insurance for my [ticket price] trip." (S. Am. Complt. ¶¶ 32-33). Below the two options, the website says, "Coverage is offered by Travel Guard Group, Inc." (S. Am. Complt. ¶ 34).

Plaintiff, for her part, purchased a travel insurance policy from United's website on February 23, 2018. She does not say how much she paid. She later "received an email from the insurance provider attaching her policy, which did not reference United." (S. Am. Complt. ¶ 56). Plaintiff also alleges that, when United sends a ticket receipt, the receipt "lists the specific amount charged for 'Trip insurance' and notes that the charge will be 'Billed separately by Travel Guard Group, Inc.'" (S. Am. Complt. ¶¶ 40-41). Plaintiff does not allege that she received such a receipt from United.

At no point during plaintiff's transaction to purchase travel insurance did United disclose to her that it had a financial interest in her purchase of travel insurance, but it did. Plaintiff alleges "[a]t no point does United disclose that it receives a commission every time a customer

elects to purchase the travel insurance product, nor that the amount of that commission was 50% or more of the total premium paid by the customer for the travel insurance product." (S. Am. Complt. ¶ 43). According to plaintiff's second amended complaint, "United has also concealed and/or failed to disclose to state regulators the fact that it receives a commission every time a customer elects to purchase a travel insurance product through its website." (S. Am. Complt. ¶ 48).

Plaintiff alleges that the price of the travel insurance "is set by the insurer, not United" and is based "solely on overall ticket price." (S. Am. Complt. ¶¶ 52, 55). Plaintiff alleges that the premium is not affected by the dates of travel, the routes or the customer's individual circumstances. Plaintiff also alleges that "[b]ecause the price of travel insurance . . . incorporates an illegal and excessive commission . . . paid to United," customers pay an inflated price. (S. Am. Complt. ¶ 53).

## II. STANDARD ON A MOTION TO DISMISS

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a claim must be plausible. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Allegations that are as consistent with lawful conduct as

they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In considering a motion to dismiss, the Court accepts as true the factual allegations in the complaint and draws permissible inferences in favor of the plaintiff. *Boucher v. Finance Syst. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018). Conclusory allegations "are not entitled to be assumed true," nor are legal conclusions. *Iqbal*, 556 U.S. at 680 & 681 (noting that a "legal conclusion" was "not entitled to the assumption of truth[;]" and rejecting, as conclusory, allegations that "'petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement"). The notice-pleading rule "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-679.

Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, the "circumstances constituting fraud" must be alleged with particularity. Fed.R.Civ.P. 9(b).

### III. DISCUSSION

#### A. Plaintiff's claim for consumer fraud

In Count I, plaintiff asserts that defendant violated the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS 505/1 et seq. To state a claim, plaintiff must allege: "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 180 (Ill. 2005).

4

"Recovery may be had for unfair as well as deceptive conduct." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 417 (Ill. 2002). Plaintiff argues that she has alleged both: (1) a deceptive act or practice; and (2) an unfair practice. (Plf. Brief at 7/Docket 87 at 12).

### 1. Plaintiff's deception claim

The Court first considers whether plaintiff has stated an ICFA claim based on a deceptive act or practice. Plaintiff argues that "United's conduct was deceptive because the net impression of its statements led her to believe that the entire cost of her policy was being paid to Travel Guard, when in fact more than 50% of it was being paid to United." (Plf. Brief at 16/Docket 87 at 21). She points specifically to her allegations that "Coverage is offered by Travel Guard Group, Inc." and that the cost was "[b]illed separately by Travel Guard Group, Inc." (Plf. Brief at 16/Docket 87 at 21).

As defendant points out, allegations of fraud must be stated with particularity (Fed.R.Civ.P. 9(b)), which means "describing the who, what, when, where, and how of the fraud." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). With respect to the statement "Coverage is offered by Travel Guard Group, Inc.," plaintiff is correct that she has alleged the first paragraph of a newspaper article. She has alleged that on February 23, 2018, she used United's website to purchase travel insurance. She alleges the website said, "Coverage is offered by Travel Guard Group, Inc." (S. Am. Complt. ¶ 34). Plaintiff does not, however, include any allegations that suggest this statement is deceptive. She does not, for example, allege that the insurance was offered by an entity other than Travel Guard Group, Inc. Instead, plaintiff specifically alleges that she later "received an email from the insurance provider attaching her policy, which did not reference United." (S. Am. Complt. ¶ 56). The Court does not see deception in these allegations.

5

Her allegation that the cost would be billed separately fares no better. Plaintiff alleges that, after a purchase, United "sends a ticket receipt" that notes the charge for travel insurance will be "Billed separately by Travel Guard Group, Inc." (S. Am. Complt. ¶ 41). Plaintiff does not allege when or if she received such a receipt, so this allegation does not comply with Rule 9(b). (To the extent plaintiff thinks she does not need to allege that she received the receipt, the Court notes she has no claim if she did not receive it. *See Community Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 823 (7th Cir. 2018) (ICFA plaintiffs "must prove that 'each and every consumer who seeks redress actually saw and was deceived by the statement in question.'") (citations omitted).) In addition, plaintiff does not allege that this was a misstatement or was otherwise deceptive. She does not, for example, allege that, in fact, someone other than Travel Guard Group, Inc. billed her for the travel insurance.

Although the alleged statements say nothing about whether United would receive a commission from the sale of travel insurance on its website, plaintiff also argues that defendants violated the ICFA by giving the impression that the expense was being paid to a third party. The Court does not see how. The words "billed by" do not mean "all proceeds will be retained by," which is the meaning plaintiff would give those words. A statement that a charge will be "billed" by Travel Guard denotes that Travel Guard will issue the invoice and/or charge plaintiff's credit card. It says nothing about what Travel Guard will do with the premium after it collects the premium or how much of the premium will be consumed by overhead costs, such as a commission. As this Court explained in its prior opinion, there is nothing fraudulent about failing to disclose a commission in this situation, because, among other things, a reasonable consumer assumes that a company receives a commission for products and services sold on its website. *Flores v. United Airlines*, 426 F. Supp.3d 520, 535-36 (N.D. Ill. 2019).

6

Plaintiff cites *Martin v. Heinhold Commodities, Inc.*, 163 Ill.2d 33, 51 (Ill. 1994), but it does not help her. In *Martin*, the problem was not that defendant failed to disclose a commission, it was that "[b]y labeling a commission a foreign service fee . . . [defendant] deceived the plaintiff class into believing the foreign service fee was an additional separate charge [defendant] necessarily incurred and paid to third parties[.]" *Martin*, 163 Ill.2d at 51. Plaintiff has alleged no such mislabeling in this case.

Plaintiff has failed to state a claim based on a deceptive practice under the ICFA.

### 2. Plaintiff's unfair practice claim

Next, defendant argues that plaintiff has not plausibly alleged an unfair practice within the meaning of the ICFA. In "determining whether a given course of conduct or act is unfair," courts must consider three factors: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Robinson*, 201 Ill.2d at 417-18. The Illinois Supreme Court has concluded that a plaintiff need not establish all three. Rather, "[a] practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Robinson*, 201 Ill.2d at 418 (quoting *Cheshire Mortgage Service, Inc. v. Montes*, 612 A.2d 1130, 1143-44 (Conn. 1992)).

#### a. Immoral, unethical, oppressive or unscrupulous

The Court dismissed plaintiff's first amended complaint for failure to allege a practice that was immoral, unethical, oppressive or unscrupulous. *Flores v. United Airlines*, 426 F. Supp.3d 520, 530-32 (N.D. Ill. 2019). For the same reasons (which the Court will not repeat here), plaintiff's second amended complaint also fails to allege a practice that is immoral, unethical, oppressive or unscrupulous.

### b. Substantial injury

Next, as the Court explained in its prior decision, plaintiff has not alleged a substantial injury. Where, as here, a plaintiff could have avoided the harm by purchasing a different policy (or not purchasing it at all), she has not suffered a *substantial* injury. *Toulon v. Continental Casualty Co.*, 877 F.3d 725, 741 (7th Cir. 2014) ("[Plaintiff] cannot establish a substantial injury because she could have avoided the harm by purchasing a different long-term care insurance policy from another company.").

### c. Public policy

In its prior decision, the Court concluded that plaintiff had not alleged plausibly a practice that violated public policy. Plaintiff had argued that United's practice of taking a commission violated Illinois public policy, citing an Illinois statute governing insurance, which states:

> A person may not accept a commission, service fee, brokerage, or other valuable consideration for selling, soliciting, or negotiating insurance in this State *if that person is required to be licensed* under this Article and is not so licensed.

215 ILCS 5/500-80(a) (emphasis added). Under the same statute, a "travel retailer" that limits its insurance activities to "offering and disseminating" travel insurance "under the direction of a travel insurance business entity" is allowed to accept compensation. 215 ILCS 5/500-108(g).

The statute defines "solicit" as "attempting to sell insurance or asking or urging a person to apply for a particular kind of insurance from a particular company." 215 ILCS 5/500-10. In dismissing the first amended complaint, the Court agreed with defendant that "solicit[ing]" under the statute must mean more than "offering or disseminating," which the statute defines separately to include, among other things:

> (1) Providing information to a prospective or current policyholder on behalf of a limited lines travel insurance entity, including brochures, buyer guides,

8

> descriptions of coverage, and price. . . . (4) Collecting premiums from a prospective or current policyholder on behalf of a limited lines travel insurance entity.

215 ILCS 5/500-108(a). In dismissing the first amended complaint, the Court concluded that plaintiff had not alleged a plausible violation of the statute, because plaintiff had not alleged that United was required to be licensed and had not alleged that United "solicit[ed]" insurance under that statute.

In her second amended complaint, plaintiff has added allegations with respect to insurance in an attempt to allege that United did not meet the criteria for being a travel retailer within the meaning of 215 ILCS 5/500-108. For example, plaintiff alleges on "information and belief, no travel insurance partner of United has registered United as a travel retailer that offers or disseminates travel insurance on behalf of and under the direction of that travel insurance company." (S. Am. Complt. ¶ 47). Defendant takes issue with plaintiff's allegation, because it is based on "information and belief."

The Seventh Circuit has long allowed plaintiffs to stand on allegations made on "information and belief" when the information is accessible only by defendants. *Carroll v. Morrison Hotel Corp.*, 149 F.2d 404, 406 (7th Cir. 1945) ("Rule 11 provides that the signature of an attorney to the pleading is a certificate that 'to the best of his knowledge, information and belief, there appears to be good ground to support the pleading; so the concept of 'information and belief' is recognized under the Rules, and there appears to be no good reason why such pleading is not permissible, as in the instant case, *where the matters are peculiarly within the knowledge of the defendants*.") (emphasis added); *see also Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005) ("What the defendants knew of the risk posed by G.B. and when they knew of *it is a matter peculiarly reserved to their memories and files*. Accordingly, [plaintiff] properly

9

averred on the basis 'information and belief.'") (emphasis added); *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683-84 (7th Cir. 1992) (because the "duty of a reasonable precomplaint inquiry [is] not satisfied by rumor or hunch" . . . "the duty to plead the circumstances constituting fraud with particularity could not be fulfilled by pleading the circumstances on 'information and belief' *unless they were facts inaccessible to the plaintiff*") (emphasis added); *Tankersley v. Albright*, 514 F.2d 956, 964 n. 16 (7th Cir. 1975) ("Where pleadings concern matters '*peculiarly within the knowledge of the defendants*,' conclusory pleading on 'information and belief' should be liberally viewed.") (emphasis added). On the other hand, public facts and matters of public record may not be alleged on information and belief. *Bankers Trust*, 959 F.2d at 684.

As defendant points out, whether or not United has been registered as a travel retailer that offers and disseminates travel insurance is a fact available in the public record. The Illinois Department of Insurance maintains records of travel retailers designated by insurance producers.[2] As such, it is not a fact that can be alleged on information and belief. The same is true of plaintiff's allegation, on information and belief, that Travel Guard failed to designate an employee as a licensed individual producer. That information, too, is publicly available.

Finally, plaintiff alleges on "information and belief" that no United employee received the training required by 215 ILCS 5/500-108(d)(5) ("the travel insurance business entity requires each employee and authorized representative of the travel retailer . . . to receive a program of

---

[2] Because defendant attached such records to its motion to dismiss, the Court notes that it is not considering those documents for purposes of this motion to dismiss. The fact that they exist and are public records, however, means the availability of the evidence is not limited to defendant, which, in turn, means an allegation on information and belief will not suffice. The records are required to be kept by travel insurance business entities and provided to the Department of Insurance. 215 ILCS § 5/500-108(d)(2).

instruction or training . . . on the types of insurance offered, ethical sales practices, and required disclosures to prospective customers"). Specifically, plaintiff alleges on "information and belief, no employees or authorized representative of United (including those responsible for United's website) have received a program of instruction or training on the types of travel insurance United offers through its website, ethical sales practices, or required disclosures to prospective customers." (S. Am. Complt. ¶ 63). This appears to be information that would be available only to defendant, so it is a proper subject of an allegation on information and belief. Nonetheless, the allegation is conclusory, in that it merely apes the words of the statute, so it is not entitled to be assumed true.

Even if the allegation weren't conclusory, all plaintiff has alleged is a minor, technical violation of public policy: that a United employee was not properly trained. Such a failure to train, though, has nothing to do with plaintiff or the injury that gives her standing under Article III. Plaintiff's complaint is that she would not have purchased the travel policy had she known about United's commission. She was not injured by Travel Guard's alleged failure to train a United employee.

In any case, as defendant argues, offending public policy is just one of three factors that suggest a practice is unfair. As the Illinois Supreme Court has said, "[a] practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Robinson*, 201 Ill.2d at 418; *see also Rossario's Fine Jewelry, Inc. v. Paddock Publications, Inc.*, 443 F. Supp.2d 976, 979 (N.D. Ill. 2006) ("Of the three *Robinson*-identified factors, only the 'public policy' consideration is met, and the patent inapplicability of the other two factors to [plaintiff's issue] heavily outweighs the one element in the evaluation called for by *Robinson*."). Where, as here, the alleged practice does not cause substantial injury and is not

immoral, unethical, oppressive or unscrupulous, a conclusory allegation of a minor, technical statutory violation that did not injure plaintiff is not enough to state a claim for an unfair practice under the ICFA.

### 3. Transactions outside Illinois

Finally, defendant argues that plaintiff has, once again, failed to allege plausibly that the transaction occurred primarily and substantially in Illinois.

The ICFA does not apply "to fraudulent transactions which take place outside Illinois." *Avery v. State Farm Auto. Ins. Co.*, 216 Ill.2d 100, 185 (Ill. 2005). In *Avery*, the Illinois Supreme Court explained that "a fraudulent transaction may be said to take place within a state if the circumstances relating to the transaction occur primarily and substantially within that state." *Avery*, 216 Ill.2d at 186. There, the Illinois Supreme Court concluded "the out-of-state plaintiffs in this case have no cognizable cause of action under the Consumer Fraud Act." *Avery*, 216 Ill.2d at 188.

In her second amended complaint, plaintiff alleges that the terms of service on United's website state that disputes arising out of the use of the website are governed by Illinois law. Specifically, plaintiff alleges that "United's website . . . contained terms and conditions . . . [that] . . . include choice of law provisions dictating that any disputes over transactions between customers and United . . . were to be 'governed by the laws of the State of Illinois.'" (S. Am. Complt. ¶ 99). Defendant, for its part, argues that plaintiff has misquoted the terms of service. Defendant, though, has not attached the terms of service, and the Court has already stated that it will not take judicial notice of the contents of a website, given how easily a website can be changed. Fed.R.Civ.P. 201(b) ("The Court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial

jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). Accordingly, the Court will take plaintiff's allegation as to the content of the website as true.

The allegations as to the choice-of-law provision on United's website, though, do not help plaintiff. Just because Illinois law may apply does not mean the extraterritorial scope of the ICFA has changed. *See Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 386 (7th Cir. 2003) ("If [plaintiffs] insist (as they must, because the contract chooses Illinois law) that Illinois law applied, then we must look to the law of Illinois to determine the scope of application. The IFDA limits its scope to franchises located within the state, and the [plaintiffs] may not claim its protections."); *Robinson v. DeVry Ed. Group, Inc.*, Case No. 16 CV 7447, 2018 WL 828050 at *3 (N.D. Ill. Feb. 12, 2018) ("The application of Illinois law does not necessarily mean that all plaintiffs may assert their claims under Illinois statutes, however. . . . Illinois law can apply, but the statute might not.").

That leaves plaintiff with the same allegations she included in her first amended complaint, which allegations the Court concluded did not plausibly allege a transaction that occurred primarily and substantially in Illinois. For example, plaintiff does not allege that she was in Illinois when she purchased the travel insurance. Plaintiff alleges that she is a resident of Texas but includes no allegations as to where she was when she used United's website to purchase travel insurance.

Instead, plaintiff alleges that United is headquartered in Illinois and that the "United employees responsible for the presentation and operation of the ticketing process on United.com work in Illinois." (S. Am Complt. ¶ 17). As this Court previously concluded, the facts that a defendant is headquartered in Illinois, that the fraudulent scheme emanated from Illinois and/or

13

that a website was designed in Illinois do not suffice to establish that a transaction occurred primarily and substantially in Illinois. *Avery*, 216 Ill.2d at 189 ("The appellate court's conclusion that a scheme to defraud was 'disseminated' from [defendant's Illinois] headquarters is insufficient."); *Robinson v. DeVry Education Group, Inc.*, Case No. 16 CV 7447, 2018 WL 828050 at *4 (N.D. Ill. Feb. 12, 2018) (dismissing ICFA claim where defendant was headquartered in Illinois and "operate[d] its website in Illinois, where it published misrepresentations," because "the administration of defendant's business in Illinois is insufficient to give a nonresident plaintiff a claim under Illinois statutes."); *Sgouros v. Transunion Corp.*, Case No. 14 C 1850, 2016 WL 4398032 at *5 (N.D. Ill. Aug. 18, 2016) (rejecting claim that website transaction with company headquartered in Illinois occurred primarily and substantially in Illinois, because that was "outweighed by Plaintiff's residence in Missouri, his search for and purchase of Defendants' product in Missouri and his attempt to benefit from that product to acquire an auto loan in Missouri"); *Bagg v. HighBeam Research, Inc.*, Case No. No. 12 C 9756, 2013 WL 3466846 at *5 (N.D. Ill. July 10, 2013) ("[E]ven if the Court assumes [defendant's] website is designed in Illinois and the alleged deceptive conduct was disseminated to Plaintiffs from Illinois, this is insufficient for the purposes of ICFA."); *Haught v. Motorola Mobility, Inc.*, Case No. 12 C 2515, 2012 WL 3643831 at *4 (N.D. Ill. Aug. 23, 2012) (rejecting plaintiff's attempt "to distinguish the instant case by emphasizing that the alleged misrepresentations were designed in Illinois and disseminated on a website registered and hosted in Illinois"). Thus, plaintiff has not plausibly alleged the transaction occurred primarily and substantially in Illinois.

  In three tries, plaintiff has not stated a claim under the ICFA. For all of these reasons, the Court dismisses Count I with prejudice.

### B. Unjust enrichment

In Count II, plaintiff seeks relief for unjust enrichment. That claim fails for the same reasons as plaintiff's ICFA claim. *Toulon*, 877 F.3d at 741-42 ("We agree with the district court that [plaintiff] failed to state a claim for unjust enrichment because she failed to state a claim for fraud or for violation of the ICFA."). Thus, the Court also dismisses Count II with prejudice.

### IV. CONCLUSION

For the reasons set forth above, the Court grants defendant's motion [81] to dismiss. The Court dismisses Counts I and II with prejudice. Civil case terminated.

SO ORDERED.                                            ENTERED: March 5, 2021

_____
JORGE L. ALONSO
United States District Judge

15